UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

ROSS WILLIAM ULBRICHT,                          :

                Movant,                          :

   -v.-                          :   19 Cv. 75212 (LGS)

UNITED STATES OF AMERICA,                          :   MEMORANDUM OF LAW AND
                                              FACTS IN SUPPORT OF
                                :   28 U.S.C. § 2255 MOTION
                Respondent.                          :

------------------------------------------------------------- x

## I. INTRODUCTION

"While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators." *United States v. Cronic*, 466 U.S. 648, 657 (1984). But sacrifice Ross William Ulbricht attorney Joshua Dratel did.

Ulbricht's 28 U.S.C. § 2255 motion tells a saga of incompetence by seemingly experienced attorneys who failed at their most basic of obligations. However, at this stage of the proceedings, the Court is not called to decide the truth or falsity of Ulbricht's allegations. Rather, the question before the Court is whether Ulbricht should be given an evidentiary hearing on his claims. Unquestionably, he should.

The files and records of the case do not "conclusively show" that Ulbricht is not entitled to relief. 28 U.S.C. § 2255. Accordingly, consistent with § 2255(b), the Court should "grant a prompt hearing" in this matter so it may decide Ulbricht's § 2255 claims. 28 U.S.C. § 2255(b).

# II. TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

II. TABLE OF CONTENTS ............................................................................... 2

III. TABLE OF AUTHORITIES ........................................................................ 3

IV. STATEMENT OF FACTS ............................................................................ 5

    A.   THE CHARGES AND INITIAL PROCEEDINGS ........................................... 5

    B.   ULBRICHT REJECTS THE GOVERNMENT'S PLEA OFFER ON THE
        ADVICE OF COUNSEL ............................................................................ 6

    C.   ALTERNATIVELY, ULBRICHT WOULD HAVE PLEADED GUILTY
        WITHOUT A PLEA AGREEMENT ............................................................ 9

    D.   ATTORNEY ADVICE AND DEFENSE THEORY OF CASE ......................... 12

    E.   SENTENCE IMPOSED FOR ULBRICHT AND RELATED DEFENDANTS ..................... 17

V. ARGUMENT ............................................................................................... 19

    GROUND ONE:  COUNSEL'S LACK OF ADVERSARIAL TESTING OF THE
                      GOVERNMENT'S CASE VIOLATED ULBRICHT'S SIXTH AMENDMENT
                      RIGHTS ........................................................................................... 19

    GROUND TWO:  COUNSEL PROVIDED DEFICIENT PLEA ADVICE; BUT FOR COUNSEL'S
                    DEFICIENT ADVICE THERE IS A REASONABLE PROBABILITY
                    ULBRICHT WOULD HAVE PLEADED GUILTY AND BEEN
                    SENTENCED TO LESS JAIL TIME ....................................................... 22

    A.   COUNSEL'S ADVICE WAS PROFESSIONALLY UNREASONABLE ............................. 22

    B.   ULBRICHT WAS PREJUDICED BY COUNSEL'S DEFICIENT ADVICE ....................... 27

VI. CONCLUSION ........................................................................................... 28

CERTIFICATE OF SERVICE ........................................................................ 29

# III. TABLE OF AUTHORITIES

## CASES

*Blumenthal v. United States*, 332 U.S. 539 (1947)......................................................7

*Florida v. Nixon*, 543 U.S. 175 (2004) ........................................................20

*Gall v. United States,* 552 U.S. 38 (2007) ....................................................25

*Garner v. Lee*, 908 F.3d 845 (2d Cir. 2018)..................................................28

*Glover v. United States*, 531 U.S. 198 (2001) ..............................................28

*Hughes v. United States*, 138 S. Ct. 1765 (2018)..........................................24

*Lafler v. Cooper,* 566 U.S. 156 (2012) .........................................................22

*Montejo v. Louisiana,* 556 U.S. 778 (2009)...................................................22

*Nelson v. United States*, 550 U.S. 350 (2009)...........................................24-25

*New Hampshire v. Maine*, 532 U.S. 742 (2001)............................................20

*Phillips v. White*, 851 F.3d 567 (6th Cir. 2017) ...........................................21

*Saranchak v. Beard*, 616 F.3d 292 (3d Cir. 2010) ........................................28

*Spriggs v. Collins*, 993 F.2d 85 (5th Cir. 1993) ............................................27

*Strickland v. Washington*, 466 U.S. 668 (1984) ........................................27-28

*United States v. Booth*, 432 F.3d 542 (3d Cir. 2005)....................................22

*United States v. Cronic*, 466 U.S. 648 (1984) ....................................1, 19, 21

*United States v. Flaharty,* 295 F.3d 182 (2d Cir. 2002) ................................20

*United States v. Rodriguez,* 392 F.3d 539 (2d Cir. 2004)..............................20

*United States v. Rubin*, 844 F.2d 979 (2d Cir. 1988) .....................................7

*United States v. Shabani*, 513 U.S. 10 (1994) ...............................................7

*United States v. Tramunti*, 513 F.2d 1087 (2d Cir. 1975) ............................................ 7

*United States v. Ulbricht*, 858 F.3d 71 (2d Cir. 2017) ..................................... 17, 26, 28

*United States v. Wellington*, 417 F.3d 284 (2d Cir. 2005) .......................................... 21

## STATUTES

18 U.S.C. § 1030(a)(2) ................................................................................................. 5

18 U.S.C. § 3553(a) ................................................................................................... 25

21 U.S.C. § 841(b)(1)(A) .............................................................................................. 5

21 U.S.C. § 846 ............................................................................................................ 5

## OTHER AUTHORITIES

Andrew Chongseh Kim, *Underestimating the Trial Penalty: An Empirical Analysis of the Federal Trial Penalty and Critique of the Abrams Study*, 84 Miss. L. J. 1195 (2015) ................................................................................................................... 24

Michael M. O'Hear, *Remorse, Cooperation, and "Acceptance of Responsibility": The Structure, Implementation, and Reform of Section 3e1.1 of the Federal Sentencing Guidelines*, 91 Nw. U. L. Rev. 1507 (1997) .............................................................. 23

National Association of Criminal Defense Lawyers, The Trial Penalty: The Sixth Amendment Right to Trial on the Verge of Extinction and How to Save It 6 (2018) .......................................................................................................... 24

Rick Jones, *Coerced Consent: Plea Bargaining, the Trial Penalty, and American Racism*, 31 Fed.Sent.R. 265 (2019) ....................................................................... 23

# IV. STATEMENT OF FACTS

A.    The Charges and Initial Proceedings

On September 27, 2013,  Ross William Ulbricht ("Ulbricht") was charged in a

three-count criminal complaint with: (1) conspiracy to commit narcotics trafficking

in violation of 21 U.S.C. §§ 846, 841(b)(1)(A); (2) conspiracy to commit computer

hacking in violation of 18 U.S.C. § 1030(a)(2), and (3) conspiracy to commit money

laundering in violation of 18 U.S.C. § 1956(h). (Compl., ECF No. 1).[1] Count One

exposed Ulbricht to 10 years to Life in prison; Counts Two and Three were

punishable by 0 - 20 years imprisonment.

On November 6, 2013, Ulbricht appeared with attorney Joshua Dratel ("Dratel")

concerning the charges. (Initial Appearance, Nov. 6, 2013, Minute Entry). Ulbricht

was ordered detained without bail. (Detention Hearing, Nov. 21, 2013, Minute

Entry).  Thereafter, Dratel agreed to multiple continuances of the Government's

deadline to obtain an indictment. (*See* Order, Dec. 9, 2013, ECF No. 10; Order, Jan.

6, 2014, (no ECF designation)).

Ulbricht was indicted by a grand jury on February 2, 2014. (Indictment, ECF No.

12). The indictment expanded the charges in the Complaint by adding a Continuing

Criminal Enterprise ("CCE") charge. The CCE charge carried a mandatory

minimum sentence of 20 years. (ECF No. 12 at 5-6). Six months later, a superseding

indictment was returned against Ulbricht. (Superseding Indictment, ECF No. 52).

The Superseding Indictment charged Ulbricht with seven crimes: (Count 1)

---

[1]    "ECF No. X" or "Minute Entry" refers to docket entries in *United States v. Ross William Ulbricht*,
No. 14-cr-68 (S.D.N.Y.).

**Memorandum of Law and Facts in Support of**
**28 U.S.C. § 2255 Motion**                                                                Page 5 of 29

narcotics trafficking, (Count 2) narcotics trafficking by means of the Internet,

(Count 3) conspiracy to commit narcotics trafficking, (Count 4) engaging in a

continuing criminal enterprise, (Count 5) conspiracy to commit or aid and abet

computer hacking, (Count 6) conspiracy to traffic in fraudulent identification

documents, and (Count 7) conspiracy to commit money laundering. (Superseding

Indictment, ECF No. 52). The penalties for the various counts were: (Counts 1-3) 10

to Life; (Count 4) 20 – Life; (Count 5) 0-5 years; (Count 6) 0 – 15 years; and (Count

7) 0 -20 years. (Presentence Investigation Report ("PSR") ¶ 150).

B.    Ulbricht Rejects The Government's Plea Offer On The Advice Of Counsel

The Government offered Ulbricht a plea deal before he was indicted. (Ulbricht

Decl. ¶ 4) (Final Pre-trial Conf. Tr., 68:16-20, ECF No. 145) (AUSA Turner

confirming pre-indictment plea offer extended). The Government's plea offer

required Ulbricht to plead guilty via an information to the three charges in the

Complaint. (Ulbricht Decl. ¶5). The parties remained free to argue for a sentence

within the statutory range, which on Count One exposed Ulbricht to a potential life

sentence. (Ulbricht Decl. ¶ 6). The Government indicated that it would indict

Ulbricht for CCE if he did not accept the plea offer, increasing Ulbricht's mandatory

minimum to 20 years. (Ulbricht Decl. ¶ 7). Thus, the guilty plea would have allowed

Ulbricht to argue for less than the 20-year minimum. (Ulbricht Decl. ¶ 7).

Ulbricht discussed the Government's plea offer with his attorneys, Dratel and

Lindsay Lewis ("Lewis"). (Ulbricht Decl. ¶ 8). While Ulbricht was worried about

accepting the plea offer which could result in life imprisonment, Ulbricht told his

attorneys early on that he "would rather plead guilty than fight a losing battle that would bankrupt" his parents. (Ulbricht Decl. ¶¶ 9-10). In response, Dratel told Ulbricht he only took his case because he thought Ulbricht wanted to fight the charges. (Ulbricht Decl. ¶ 11). Ulbricht reiterated that he did not want to go to trial if it was a "lost cause" or would "ruin [his] parents financially." (Ulbricht Decl. ¶ 12). Ulbricht was also upfront with his attorneys from the beginning that he created the Silk Road and ran it for a period of time. (Ulbricht Decl. ¶ 13).

At no time after the plea offer was conveyed did Dratel or Lewis explain to Ulbricht what the Government needed to prove to obtain a conviction on the counts in the Complaint. (Ulbricht Decl. ¶ 14). For example, neither Dratel nor Lewis told Ulbricht that, with respect to the drug conspiracy charge:

- The crime of conspiracy lies in the agreement between two or more persons. No overt act need be proven. *United States v. Shabani*, 513 U.S. 10, 15 (1994).

- A "tacit understanding to carry out the prohibited conduct" is sufficient. *United States v. Rubin*, 844 F.2d 979, 984 (2d Cir. 1988). No express agreement is required.

- Because "[s]ecrecy and concealment are essential features of successful conspiracy," prosecutors may prove the "essential nature of the plan and [a defendant's] connections with it" through circumstantial evidence and inferences. *Blumenthal v. United States*, 332 U.S. 539, 557 (1947).

- Specific intent may be proven by circumstantial evidence. "[A] single act may be sufficient for an inference of involvement in a criminal enterprise of substantial scope at least if the act is of a nature justifying an inference of knowledge of the broader conspiracy." *United States v. Tramunti*, 513 F.2d 1087, 1111 (2d Cir. 1975).

(Ulbricht Decl. ¶ 14 (a) – (d)).

Overall, the consensus from Ulbricht's attorneys was that the Government's plea offer was not worth taking because there was a "significant risk" Ulbricht would be sentenced to life in prison if he took the deal. (Ulbricht Decl. ¶ 15). For instance, the Government, according to Ulbricht's lawyers, would ask for life in prison if Ulbricht accepted the offer. (Ulbricht Decl. ¶ 16). Dratel and Lewis said this made accepting the plea offer "too risky" and created "too much exposure" for Ulbricht. (Ulbricht Decl. ¶ 17).

On the other hand, Ulbricht's attorneys also told Ulbricht that he had nothing to lose by rejecting the plea offer. (Ulbricht Decl. ¶ 18). This was because the Sentencing Guidelines called for a sentence of life imprisonment if Ulbricht pleaded guilty or went to trial. (Ulbricht Decl. ¶ 19). Obtaining an acquittal, according to Ulbricht's attorneys, was the best chance to avoid a life sentence. (Ulbricht Decl. ¶ 19).

Ulbricht was not advised that the sentencing judge would probably be more lenient if he accepted the plea deal and took responsibility for his conduct. (Ulbricht Decl. ¶ 20). Ulbricht was also not counseled that there was a realistic chance he could get less than life in prison under the plea deal even without the Government's acquiescence. (Ulbricht Decl. ¶ 21).

Ulbricht rejected the Government's plea offer based on Dratel and Lewis' advice. (Ulbricht Decl. ¶ 22). Ulbricht would have accepted the Government's plea offer had Dratel and Lewis properly explained to him the elements—and how the

Government could prove the elements—of the charges in the Complaint. (Ulbricht Decl. ¶ 23).

A clear understanding of the elements—taking into account Ulbricht's undisputed creation and operation of the Silk Road for a period of time—would have crystallized in Ulbricht's mind that going to trial was exactly the "lost cause" he was trying to avoid. (Ulbricht Decl. ¶ 24). Additionally, Ulbricht would have accepted the plea offer in order to show remorse, accept responsibility, and otherwise increase the likelihood of being sentenced to less than life in prison. (Ulbricht Decl. ¶ 25). Ulbricht would have also accepted the plea offer so he could avoid the possibility of being indicted on the CCE charge which carried a higher mandatory minimum had he been properly advised. (Ulbricht Decl. ¶ 26).

C. <u>Alternatively, Ulbricht Would Have Pleaded Guilty Without A Plea Agreement</u>

The Government indicted Ulbricht on February 4, 2014, shortly after Ulbricht rejected the plea deal based on Dratel and Lewis' advice. (Ulbricht Decl. ¶ 27); (Indictment, ECF No. 12). As promised by the Government, the indictment included a CCE charge. *Id.*

On February 25, 2014, the Government turned over its first batch of discovery to Dratel and Lewis. By August 1, 2014, Dratel and Lewis had the bulk of the Government's discovery. (*See* Def's. Mem. Law in Support of Mot. to Suppress Evid., Order Produc. Of Disc., ECF No. 48 at 5 n.1) ("All of the warrants, orders, and supporting materials produced in discovery are provided with this motion as Exhibits[*sic*].""). Indeed, by July 7, 2014, Ulbricht himself was already viewing the

massive amounts of discovery produced by the Government. (*See* Order, July 7, 2014, ECF No. 40).

Yet, Dratel and Lewis' advice to Ulbricht about pleading guilty did not change after the Government turned over its discovery. (Ulbricht Decl. ¶ 28). At no time was Ulbricht ever advised by his attorneys that the Government's evidence against him was overwhelming. (Ulbricht Decl. ¶ 29).

Furthermore, neither Dratel nor Lewis ever discussed with Ulbricht the possibility of pleading "open" to the original indictment. (Ulbricht Decl. ¶ 30). And Ulbricht did not know that there was a greater chance of receiving less than life in prison by pleading guilty to the indictment—even though the Guidelines would have still recommended a life sentence. (Ulbricht Decl. ¶ 31). Rather, Ulbricht was continuing to operate under the belief that there was no realistic chance of being sentenced to less than life without the Government's agreement. (Ulbricht Decl. ¶ 32).

By late May 2014, Dratel and Lewis knew the Government was considering a superseding indictment. (*See* Endorsed Letter, June 2, 2014, ECF No. 33) (granting second extension). On July 9, 2014, the Court denied Ulbricht's motion to dismiss the indictment. (Op. & Order, July 9, 2014, ECF No. 42). Nevertheless, in the face of the Government's substantial evidence against Ulbricht and the Court's rejection of Ulbricht's challenge to the indictment, neither Dratel nor Lewis advised Ulbricht to enter an open plea to the indictment. (Ulbricht Decl. ¶ 33).

Ulbricht would have pleaded guilty to the original indictment, even without a plea agreement, if his attorneys had explained to him how overwhelming the Government's evidence was against him. (Ulbricht Decl. ¶ 34). Ulbricht would have also pleaded guilty if Dratel and Lewis had explained to Ulbricht that the Court's order denying dismissal of the indictment provided a broad legal basis for the Government's charges against him. (Ulbricht Decl. ¶ 35).

A couple of months before trial, Ulbricht told Lewis that he had heard from other jail inmates that defendants who go to trial tend to be sentenced more harshly if convicted at trial. (Ulbricht Decl. ¶ 36). Ulbricht asked Lewis if there was a way he could avoid a life sentence. (Ulbricht Decl. ¶ 37). Lewis told Ulbricht that defendants who go to trial and lose tend to suffer a "trial tax." (Ulbricht Decl. ¶ 38). Lewis also told Ulbricht that pleading guilty would not help because the three-point reduction for accepting responsibility would not reduce Ulbricht's Guidelines below life. (Ulbricht Decl. ¶ 39). Ulbricht asked Lewis to convey a new offer on his behalf: Ulbricht would plead guilty to the superseding indictment if the Government would recommend a sentence of 30 years. (Ulbricht Decl. ¶ 40). Lewis told Ulbricht she did not think the government was open to further plea negotiations. (Ulbricht Decl. ¶ 41). None of Ulbricht's attorneys further discussed with Ulbricht the possibility of a guilty plea from this point forward. (Ulbricht Decl. ¶ 42).

Ulbricht would have entered an open plea to the superseding indictment if his lawyers had advised him that: (1) the evidence against Ulbricht was overwhelming; (2) the Court's order denying dismissal of the indictment provided strong legal

support for the Government's theory of the case; and (3) there was a greater likelihood Ulbricht would receive less than life if he pleaded guilty versus the likely sentence following a guilty verdict at trial. (Ulbricht Decl. ¶ 43). But again, the entire concept of pleading "open," whether to the original or superseding indictment, was never discussed with Ulbricht by his lawyers. (Ulbricht Decl. ¶ 44).

D.    Attorney Advice and Defense Theory Of Case

None of Ulbricht's attorneys ever told him that he was fighting a "lost cause" by going to trial. (Ulbricht Decl. ¶ 45). Ulbricht was never told by his attorneys that he did not have a legally viable trial defense. (Ulbricht Decl. ¶ 46). Ulbricht's attorneys repeatedly assured him that "there was a way to win" at trial. (Ulbricht Decl. ¶ 47). Trial counsel told Ulbricht that the Government had to "build a bridge from your innocence to guilt," to obtain a conviction and that "the bridge had to be complete." (Ulbricht Decl. ¶ 48). Dratel also told Ulbricht he would admit in opening statements that Ulbricht started Silk Road, but this was consistent with a viable trial strategy that could win. (Ulbricht Decl. ¶ 49). So, what was Dratel's theory of the defense to the criminal charges then?

The Court made it clear very early in the case that knowingly designing and launching the Silk Road website for the "purpose of facilitating unlawful transactions," was enough to convict Ulbricht on Count One. (Op. & Order, July 9, 2014, ECF No. 42 at 22). The Court similarly made clear that even if "Ulbricht's active participation," might have taken place years before a co-conspirator agreed to

join the conspiracy the Government could still sustain a conviction. (Op. & Order, July 9, 2014, ECF No. 42 at 25). According to the trial court:

> …Ulbricht is alleged to have been the designer of Silk Road, and as a matter of law, that is sufficient.

(Op. & Order, July 9, 2014, ECF No. 42 at 27) (footnote omitted).

The Court's ruling explained why Ulbricht's attorneys at first "[i]mportantly" had "not conceded that he created Silk Road, or that he administered or oversaw its operations…."  (Op. & Order, Oct. 10, 2014, ECF No. 89 at 3). Ulbricht's counsel told him that if the motion to suppress was granted the Government's entire "case would fall apart." (Ulbricht Decl. ¶ 50). Trial counsel never explained to Ulbricht that the motion to suppress was "*fatally deficient*," as the Court remarked in its order denying Ulbricht's motion to suppress. (Ulbricht Decl. ¶ 51); (*See* Op. & Order, Oct. 10, 2014, ECF No. 89 at 6) (emphasis added). During trial, the court charitably characterized counsels' decision not to cure the motion to suppress as "particularly interesting" since counsel "conceded that…Ulbricht was the creator of Silk Road," during opening statements. (Op. & Order, Feb. 1, 2015, ECF No. 173 at 2).

One month before trial, the defense theory was still apparently malleable and centered on disproving Ulbricht's digital identity as Dread Pirate Roberts ("DPR"). First, Dratel foreshadowed a "hijacking theory," that someone besides Ulbricht "usurped control of the DPR account and impersonated Ulbricht." (Mem. & Dec., at 16, Dec. 22, 2014). Second, Dratel claimed a wholly different theory: that "Ulbricht was a dupe of the genuine DPR, and/or that there were multiple DPR's through the course of Silk Road's existence." (Mem. & Dec., at 17, Dec. 22, 2014). At the same

time, Dratel represented in his submissions that Ulbricht was "being groomed as

DPR's successor, *but never operated in that capacity*." (Dratel Ltr. to Hon. Katherine

Forrest at 4, December 9, 2014) (emphasis added). The trial court explained in

detail the problems with the defense theory that multiple DPRs existed:

> To be sure, evidence that were two, ten, or one hundred successive
> DPRs may help establish that there is reasonable doubt as to whether
> Ulbricht-if the Government shows that he is one of the DPRs-
> committed some of the charged acts. But if many different DPRs all
> committed different illegal acts, that does not negate criminal liability
> for the particular DPR on trial for his particular criminal acts, if the
> Government meets its burden of proof. Put bluntly, even if there were
> 100 different DPRs, that does not mean that any were acting lawfully.

(Mem. & Dec., at 21, Dec. 22, 2014). This admonishment did not deter Dratel:

> In his opening statement, Ulbricht's counsel conceded that Ulbricht
> had, in fact, created Silk Road. Counsel told the jury that the evidence
> would show that Ulbricht had ceased his involvement with Silk Road
> "after a few months" but had been lured back—just as law enforcement
> closed in—to be the fall guy. In short, he was caught red-handed but
> was a dupe. Counsel told the jury that Ulbricht was not the Dread
> Pirate Roberts.

(Op. & Order, April 27, 2015, ECF No. 237 at 2).

The only defense outlined by Ulbricht's attorneys at trial was that "somehow—in

a manner not then explained—Ulbricht had been set up by the real criminal

mastermind." (Op. & Order, April 27, 2015, ECF No. 237 at 3). By all accounts, the

evidence of Ulbricht's guilt was "overwhelming" and "went unrebutted" at trial. (Op.

& Order, April 27, 2015, ECF No. 237 at 3).

Dratel also made key stipulations about the purchase of drugs from Silk Road by

a Government agent. (*See* Trial Tr. 181-183) (stipulation regarding drug purchases

by Homeland Security Agent in Chicago); (Trial Tr. 1389-1390) (stipulation of

undercover purchases by DEA Agent in New York). But Dratel did not just stipulate that purchases were made using the Silk Road website; Dratel also stipulated that 1) the purchasers received the substances as paid for on the website by mail, 2) those substances were all reliably tested in Government laboratories, and 3) that the substances were all in fact illegal drugs. (*See* Gov. Trial Exh. 802A and 802) (stipulation and spreadsheet detailing purchases by DEA Agent Richardson); (Gov. Trial Exh. 801A and 801) (stipulation and spreadsheet regarding purchases by Homeland Security Agent DerYeghiayan). The jury was later instructed by the Court on the legal effect of stipulations:

> A stipulation of fact is an agreement among the parties that a certain fact is true. *You should regard such agreed facts as true*.

> A stipulation of testimony is an agreement among the parties that, if called, a witness would have given certain testimony. You must accept as true the fact that the witness would have given the testimony. However, it is for you to determine the effect or weight to give that testimony.

(Jury Instructions, ECF No. 177 at 30) (emphasis added).

Indeed, Dratel's concessions were the focal point of the Government's closing argument:

> The dispute in this case isn't even about whether the defendant operated the Silk Road website. The defense has already granted that he did. It's about when and for how long. I'll explain later under the law it doesn't even really matter --

(Trial Tr., Feb. 3, 2015, ECF No. 218 at 65:18-22). The Government hammered home how the defense did not put on any evidence that Ulbricht handed off running Silk Road to someone else. (Trial Tr., Feb. 3, 2015, ECF No. 218 at 101). Unlike

Ulbricht's defense team, the prosecution understood the legal significance of the
defense's concessions:

> But even if there were any reason to believe the defendant's story,
> which there is not, it wouldn't even make a difference under the law.
> The government doesn't have to prove that the defendant's criminal
> activity continued from start to finish, from the beginning of Silk Road
> to the end. As I expect the Judge will instruct you, it doesn't matter
> when a person becomes part of a criminal conspiracy, even if it's just at
> the beginning or just at the end, he is liable for everything that
> happens as part of the conspiracy as long as it is foreseeable to him,
> before or after he joins.

(Trial Tr., Feb. 3, 2015, ECF No. 218 at 103-104).

Ulbricht's defense team believed all the way through closing arguments that the
Government needed to prove beyond a reasonable doubt that Ulbricht and DPR
were "the same person." (Trial Tr., Feb. 3, 2015, ECF No. 218 at 126). Ulbricht's
trial counsel repeatedly stressed that Ulbricht started the Silk Road and then sold
it to someone else in mid-2011. (Trial Tr., Feb. 3, 2015, ECF No. 218 at 137).

Despite admitting Ulbricht's initial involvement in the Silk Road, Dratel told the
jury that the defense was "not relying" on the conspiracy withdrawal instruction in
the jury charge. (Trial Tr., Feb. 3, 2015, ECF No. 218 at 155). According to Dratel,
"Ulbricht was never a conspirator at the beginning or the end." (Trial Tr., Feb. 3,
2015, ECF No. 218 at 137).

But as the Court held, Ulbricht had been "caught red-handed—logged in and
chatting as DPR on a personal laptop, which Ulbricht unquestionably owned, filled
with Silk Road files." (Op. & Order, April 27, 2015, ECF No. 237 at 15-16). Even the
Second Circuit recognized that trial counsels' "principal defense strategy" was "more

of an effort at mitigation than outright denial of [Ulbricht's] guilt of the conspiracy and other charges in the indictment…" *United States v. Ulbricht*, 858 F.3d 71, 89 (2d Cir. 2017). Unsurprisingly, Ulbricht was quickly found guilty on all charges.

E.     Sentence Imposed for Ulbricht and Related Defendants

Ulbricht was sentenced on Count Two and Count Four to Life imprisonment to run concurrently; Count Five to five years imprisonment; Count Six to fifteen years imprisonment; and Count Seven to 20 years imprisonment, all to run concurrently. (Judgment, ECF No. 269 at 3). There were a number of other persons prosecuted federally in connection with the Silk Road marketplace beyond Ulbricht. The sentences imposed on other defendants in Silk Road related cases are shown in the table below:[2]

| Defendant | Plea / Trial | Sentence | Release Date[3] |
|---|---|---|---|
| **Andrew Michael Jones** | Guilty Plea[4] | 66 months | 8/4/2023 |
| • Role: Silk Road website administrator<br>• Most serious charge: conspiracy to commit narcotics trafficking | | | |
| **Gary Davis** | Guilty Plea[5] | 78 months | Unknown |
| • Role: Silk Road website administrator<br>• Most serious charge: conspiracy to commit narcotics trafficking | | | |
| **Peter Philip Nash** | Guilty Plea[6] | 17 months (time served) | 5/28/2015 |
| • Role: primary Silk Road discussion forum moderator<br>• Most serious charge: conspiracy to commit narcotics trafficking | | | |

[2] Consistent with Fed. R. Evid. 201(c)(2), Ulbricht requests the Court take judicial notice of the convictions and sentences referenced in the table.
[3] Release date information was obtained using the Federal Bureau of Prisons online inmate locator available at https://bop.gov/inmateloc/ on October 7, 2019.
[4] Charged and sentenced in *United States v. Andrew Jones*, no. 1:13-cr-950-JMF-1 in the Southern District of New York.
[5] Charged and sentenced in *United States v. Gary Davis*, no. 1:13-cr-950-JMF-2 in the Southern District of New York.
[6] Charged and sentenced in *United States v. Peter Philip Nash*, no. 1:13-cr-950-JMF-3 in the Southern District of New York.

| Cornelis Jan Slomp | Guilty Plea[7] | 120 months | 6/3/2022 |
|---|---|---|---|
| • Role: large seller of drugs on Silk Road including over 104 kilos of MDMA, 500,000 ecstasy pills and kilo-quantities of other drugs. <br> • Most serious charge: 1) conspiracy to import controlled substance into the U.S. (MDMA), 500 grams or more of cocaine; & 2) conspiracy to manufacture and distribute MDMA | | | |
| Steven L. Sadler | Guilty Plea[8] | 60 months | Released 6/9/2017 |
| • Role: large kilo-quantity seller of drugs on Silk Road. <br> • Most serious charge: conspiracy to commit narcotics trafficking | | | |
| Jason Weld Hagen | Guilty Plea[9] | 37 months* | Released 4/28/2017 |
| • Role: large seller of drugs on Silk Road <br> • Most serious charge: 1) conspiracy to distribute methamphetamine via the internet; 2) international money laundering <br> • *Government prosecutors recommended reduced sentence due to involvement of former Secret Service Agent Shaun Bridges in the investigation.[10] | | | |
| Roger Thomas Clark | Pending[11] | N/A | N/A |
| • Role: paid employee who hired others and provided details of government investigations <br> • Most serious charge: conspiracy to commit narcotics trafficking | | | |
| Shaun W. Bridges | Guilty Plea[12] | 71 months | 12/23/2022 |
| • Role: government agent investigating Silk Road caught stealing over $1 million from the Silk Road and attempting to flee the U.S. <br> • Most serious charge: money laundering and wire fraud | | | |
| Carl Mark Force | Guilty Plea[13] | 78 months | 10/12/2020 |
| • Role: government agent investigating Silk Road. Stole Bitcoin using undercover identities and received personal payments of Bitcoin from Silk Road operators. <br> • Most serious charge: money laundering and extortion under color of law | | | |

---

[7] Charged and sentenced in *United States v. Cornelis Slomp*, no. 1:13-cr-689 in the Northern District of Illinois.

[8] Charged and sentenced in *United States v. Steven Sadler*, no. 2:13-cr-00321-RSM in the Western District of Washington.

[9] Charged and sentenced in *United States v. Jason Hagen*, no. 3:13-cr-00596 in the District of Oregon.

[10] *See* B. Denson, "Global meth dealer from Vancouver get lighter sentence because of U.S. agents' 'Silk Road' corruption," Oregonlive: The Oregonian, Nov. 4, 2015, https://www.oregonlive.com/pacific-northwest-news/2015/11/global_silk_road_meth_dealer_f.html (last visited Oct. 7, 2019).

[11] Charged and sentenced in *United States v. Clark*, no. 1:15-cr-00866-WHP in the Southern District of New York.

[12] Charged and sentenced in *United States v. Shaun Bridges*, no. 3:15-cr-00319-RS in the Northern District of California.

[13] Charged and sentenced in *United States v. Carl Force*, no. 3:15-cr-00319-RS in the Northern District of California.

Ulbricht was the only person involved with Silk Road to go trial and be sentenced to life. None of the other related cases went to trial. None of the other defendants were sentenced anywhere close to the life sentence Ulbricht received.

## V. ARGUMENT

**Ground One:   Counsel's Lack Of Adversarial Testing Of The Government's Case Violated Ulbricht's Sixth Amendment Rights**

The Supreme Court has long recognized that:

> the adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate." The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.

*United States v. Cronic*, 466 U.S. 648, 656-67 (1984) (internal citations omitted). The trial in Ulbricht's case lost its character as a confrontation between adversaries when Dratel conceded Ulbricht's guilt from the outset by telling the jury during opening statements that Ulbricht created the Silk Road and by stipulating during the trial that illegal drugs were bought and sold from Silk Road. *Cronic,* 466 U.S. at 668.

Dratel's concessions and stipulations removed any plausible argument of Ulbricht's innocence, including any argument that Ulbricht had withdrawn from the narcotics conspiracy, or that he had never joined the conspiracy (ECF 237 at 2-

3).[14] *See e.g., United States v. Flaharty,* 295 F.3d 182, 192 (2d Cir. 2002)

("[w]ithdrawal is an affirmative defense and the defendant has the burden of

showing that he performed affirmative acts that were "inconsistent with the object

of the conspiracy and communicated in a manner reasonably calculated to reach co-

conspirators, mere cessation of activity is insufficient.") (internal citations and

quotations omitted); *United States v. Rodriguez,* 392 F.3d 539, 544 (2d Cir. 2004)

("[t]o sustain a conspiracy conviction, the government must present some evidence

from which it can reasonably be inferred that the person charged with conspiracy

knew of the existence of the scheme alleged in the indictment and knowingly joined

and participated in it."). In fact, Dratel expressly decided against advancing any

claim that Ulbricht withdrew from the conspiracy. (*See* Trial Tr. at 1567 ("Our

defense is not withdrawal."); (Def's. Ltr. Mot., Jan. 30, 2015, ECF 168 at 4) ("As a

threshold matter, the government's proposed instruction regarding withdrawal is

inappropriate because Mr. Ulbricht does not intend to interpose the defense of

withdrawal.").

    The Supreme Court has recognized that an attorney's concession of guilt at trial

can eliminate the adversarial testing envisioned by the Sixth Amendment. In

*Florida v. Nixon*, 543 U.S. 175 (2004), for instance, the Court considered whether an

attorney's strategic concession of guilt in a capital case was the constructive denial

---

[14]   To the extent the Government might argue that Dratel's concessions were not in fact concessions
of guilt, the Government should be judicially estopped from making this argument. Judicial estoppel
"generally prevents a party from prevailing in one phase of a case on an argument and then relying
on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742,
749 (2001). The Government previously argued to the jury Dratel's concession of guilt was conclusive
because the "government doesn't have to prove that the defendant's criminal activity continued from
start to finish." (Trial Tr., Feb. 3, 2015, ECF No. 218 at 103-104).

of counsel. The Court noted that "the gravity of the potential sentence in a capital trial and the proceeding's two-phase structure vitally affect counsel's strategic calculus." *Id*. at 191. As a result, the Court found that counsel's concession during a death penalty case, in which there was overwhelming evidence of guilt, was a wise strategic decision to lower the chance that the death penalty would be imposed. The Court thus concluded that defense counsel's concession was not the constructive denial of counsel. The Court, however, noted that "such a concession in a run-of-the-mine trial might present a closer question." *Id*. at 90. That precise "closer question" is presented here.

Ulbricht's trial was in a non-capital case. There was no justification for Dratel to plead Ulbricht guilty in the context of a trial, removing the meaningful adversarial testing required by the Sixth Amendment. Indeed, in *United States v. Wellington* the Second Circuit called an attorney's decision to "stipulate to every element of the only charged offense" an "ill-advised and wholly ineffective trial strategy." *United States v. Wellington*, 417 F.3d 284, 288 (2d Cir. 2005); *see also Phillips v. White*, 851 F.3d 567, 581 (6th Cir. 2017) (*Cronic* applied where proceeding functionally "was a presentation by one party, not a contest between adversaries"). Accordingly, the Court should find that Ulbricht's Sixth Amendment rights were violated by counsel's failure to subject the Government's case to meaningful adversarial testing. Because this error is presumptively prejudicial under *Cronic*, the Court should grant Ulbricht § 2255 relief and vacate his convictions.

**Ground Two:   Counsel Provided Deficient Plea Advice; But For Counsel's Deficient Advice There Is A Reasonable Probability Ulbricht Would Have Pleaded Guilty And Been Sentenced To Less Jail Time**

The Sixth Amendment guarantees effective assistance at all critical stages of the proceedings. *Montejo v. Louisiana,* 556 U.S. 778, 786 (2009). This right extends to the plea-bargaining process. *Lafler v. Cooper,* 566 U.S. 156, 168 (2012) ("If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."). The right to effective assistance also extends to whether to enter an "open" guilty plea to charges. *United States v. Booth*, 432 F.3d 542 (3d Cir. 2005).

In order to prove ineffective assistance of counsel at the plea stage, a petitioner must show that: (1) counsel's advice was unreasonable; (2) "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court," (3) "the court would have accepted its terms," and (4) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler,* 566 U.S. at 164. Ulbricht can satisfy each of *Lafler*'s requirements.

A.  Counsel's Advice Was Professionally Unreasonable

As discussed above, the Government offered Ulbricht the opportunity to plead guilty to a three-count information composed of the same charges in the Complaint. The Government threatened to charge Ulbricht with CCE, which carried a 20-year mandatory minimum, if Ulbricht refused the offer. Dratel and Lewis advised Ulbricht to reject the offer because there was too much sentencing risk since the Government

indicated it would seek a life sentence, and the Guidelines called for life sentence.  On the advice of counsel, Ulbricht rejected the plea offer.

But Dratel and Lewis never explained to Ulbricht the enormous risk he faced by going to trial. Ulbricht, who had never been charged with a federal felony before, was unaware that the judge would likely be more lenient if he accepted the government's plea offer. Ulbricht was also not told how strong the evidence against him truly was, nor what the Government needed to prove to demonstrate his guilt. This was deficient performance.

By the time Ulbricht's case was making its way through the courts, counsel should have known the peril of putting on a mitigation case in the guilt/innocence phase of a trial, instead of seeking mercy from the Court via a guilty plea. It is generally known that sentencing judges impose more lenient sentences when a defendant enters a timely plea of guilty, accepts responsibility, and exhibits remorse. *See, e.g.*, Rick Jones, *Coerced Consent: Plea Bargaining, the Trial Penalty, and American Racism*, 31 FED.SENT.R. 265, 269-70 (2019) (explaining that the "average federal sentence for drug offenses for individuals who accept a plea is 5 years, 4 months" and for those who went to trial, "the average is 16 years"); Michael M. O'Hear, *Remorse, Cooperation, and "Acceptance of Responsibility": The Structure, Implementation, and Reform of Section 3e1.1 of the Federal Sentencing Guidelines*, 91 NW. U. L. REV. 1507, 1511 (1997) (explaining the "remorse paradigm" in federal sentencing that "asks whether the defendant fully and freely admits to committing the offense, whether the defendant accepts punishment as an appropriate

consequence of the offense, whether the defendant regrets what was done, and whether the defendant is sincerely committed to avoiding future criminal activity").

By contrast, putting the government to its burden of proof in the face of overwhelming evidence almost always results in a significantly longer sentence. *See* Andrew Chongseh Kim, *Underestimating the Trial Penalty: An Empirical Analysis of the Federal Trial Penalty and Critique of the Abrams Study*, 84 Miss. L. J. 1195 (2015) (revealing that the average federal defendant who goes to trial receives a sentence 64% longer than if he pleaded guilty); *see also* NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, THE TRIAL PENALTY: THE SIXTH AMENDMENT RIGHT TO TRIAL ON THE VERGE OF EXTINCTION AND HOW TO SAVE IT 6 (2018) (describing the "trial penalty"). Here, opting for a trial in the face of overwhelming evidence, an increased mandatory minimum on a CCE charge and three additional counts in a subsequent superseding indictment, all but guaranteed Ulbricht would receive a much more severe sentence.

Although Ulbricht's advisory guideline range would have been life whether convicted following a trial or guilty plea, rejecting the government's plea offer and proceeding to trial in the face of overwhelming evidence carried great risk. The Guidelines are not the end-all, be-all of federal sentencing. *See Nelson v. United States*, 550 U.S. 350, 351 (2009) ("[T]he Guidelines are not only not mandatory on sentencing courts; they are also not to be *presumed* reasonable.")(emphasis added); *Hughes v. United States*, 138 S. Ct. 1765, 1776 (2018) ("To be sure, the Guidelines are advisory only, and so not every sentence will be consistent with the relevant

Guidelines range."). Sentencing courts are now free to fashion a sentence independent of the guidelines, *Nelson* at 352, and the north star for federal sentencing is no longer the advisory guidelines range, but the purposes of sentencing found in 18 U.S.C. § 3553(a).

Under Section 3553(a), a court must impose a sentence no greater than necessary to comport with the statutory goals of sentencing. Consequently, the Court possessed significant discretion under the § 3553(a) factors to impose a sentence well below the Guidelines range. *Gall v. United States,* 552 U.S. 38, 50 (2007). Indeed, district courts within the Second Circuit have in the past issued a majority of sentences outside "the calculated Guidelines range." (Def's. Sentencing Ltr. to Hon. Katherine Forrest, ECF 252 at 68) (quoting U.S. SENT. COMM'N., PRELIMINARY QUARTERLY DATA REPORT (2014*).* Despite the severity of the offense and obvious need for a significant prison sentence, a timely admission of guilt would have cast Ulbricht's case for mitigation in an entirely different light, and greatly increased the likelihood of a sentence of less than life.

Reasonable strategy in a case where the evidence of guilt "was, in all respects, overwhelming" that went virtually "unrebutted" at trial, was to advise Ulbricht to take responsibility for his crimes at a stage in the proceedings where he could have received some conceivable benefit. (Op. & Ord. Deny. Mot. New Trial, ECF 237 at 3). That is especially so here, where the only realistic opportunity for Ulbricht to be spared from life in prison was through a guilty plea, acceptance of responsibility, and a persuasive mitigation case at sentencing.

Remorse following a guilty verdict at trial—where scarce judicial resources are squandered on unmistakably guilty defendants—seems far less genuine than choosing to accept responsibility at the outset of the case. In sum, counsel should have explained that there were real upsides in accepting a plea deal and real downsides in rejecting it and going to trial. Only by providing such advice could Ulbricht have made an informed decision on whether to accept or reject the plea offer.

On the other hand, proceeding to trial in a case with overwhelming evidence provided no benefit whatsoever. Indeed, Dratel had no viable defense strategy. Dratel conceded guilt on every essential element of the crimes for which Ulbricht had been charged. *See United States v. Ulbricht*, 858 F.3d 71, 89-90 (2d Cir. 2017) (recognizing that Ulbricht's "principal defense strategy at trial [was] more of an effort at mitigation than outright denial of his guilt of the conspiracy and other charges in the indictment…"); (Trial Tr. Jan. 13, 2015, ECF No. 196 at 60-61) (trial counsel speaking at opening argument) ("And Silk Road was Ross's idea. He created it as a completely freewheeling, free market site that could sell anything…").[15] Trial counsel's advice was simply unreasonable under the circumstances.

---

[15] *See* ECF 237 at 1 ("The charges against Ulbricht stemmed from his alleged design, creation, and operation of Silk Road—a sprawling online marketplace for illegal narcotics, computer hacking materials, and fraudulent identification documents."). As discussed in further detail elsewhere, counsel also stipulated to numerous transactions involving a voluminous number of narcotics that occurred via the Silk Road marketplace. Collectively, these concessions formed an independent basis for Ulbricht's convictions for narcotics conspiracy, money laundering, and orchestrating a continuing criminal enterprise.

B.   Ulbricht Was Prejudiced By Counsel's Deficient Advice

Had Ulbricht been properly advised, there is a reasonable probability he would have accepted the Government's plea offer or alternatively entered an open plea to the indictment or superseding indictment. From the outset of the case Ulbricht told his lawyers that he "would rather plead guilty than fight a losing battle that would bankrupt" his parents. (Ulbricht Decl. ¶ 10). It was only because of poor advice that Ulbricht passed on the Government's plea offer. Furthermore, as trial grew closer, Ulbricht, at his own initiative, inquired whether a plea to 30-years might be possible. (Ulbricht Decl. ¶¶ 36-41). Ulbricht was not dead set on going to trial. (Ulbricht Decl. ¶¶ 10, 12, 36-41). A "reasonable probability" is merely a probability "sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). On this record, there is more than enough evidence to show a reasonable probability Ulbricht would have pleaded guilty but for his counsel's deficient performance.

Further, there is a reasonable probability the Court would have sentenced Ulbricht to less than life in prison had he pleaded guilty. As the Fifth Circuit has remarked, a reasonable probability is more easily shown in the non-capital sentencing context because "when the discretionary sentencing range is great, practically any error committed by counsel could have resulted in a harsher sentence, even if only by a year or two." *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993). This is especially the case in light of the Supreme Court's later holding that

"any amount of actual jail time has Sixth Amendment significance." *Glover v. United States*, 531 U.S. 198, 203 (2001).

Moreover, *Strickland* prohibits the Court from *subjectively* assessing whether there is a reasonable probability Ulbricht would have been sentenced to less jail time. Instead, the inquiry demands a more abstract evaluation of the effect the changed circumstances had on the "unspecified, objective factfinder." *Garner v. Lee*, 908 F.3d 845, 862-63 (2d Cir. 2018) (collecting cases discussing objective inquiry); *Saranchak v. Beard*, 616 F.3d 292, 309 (3d Cir. 2010) (error to asses impact on particular sentencing judge).

Ulbricht's crimes—while serious—were his first. Every other person convicted of involvement with the Silk Road received a sentence that was substantially less than life in prison. Objectively, had Ulbricht pleaded guilty and accepted responsibility for his crimes, there is a reasonable probability he would have been sentenced to less than life in prison. Indeed, the Second Circuit in *Ulbricht* stated it "might not have imposed the same sentence ourselves in the first instance." *Ulbricht*, 858 F.3d at 134. That Ulbricht's life sentences are subject to debate—in the context of a conviction following a trial—demonstrates *a fortiori* a reasonable probability that Ulbricht would have been sentenced to less than life had he pleaded guilty and accepted responsibility for his crimes. Accordingly, prejudice has been shown.

## VI. CONCLUSION

Based on the foregoing, the Court should grant Ulbricht an evidentiary hearing on his § 2255 claims and afford § 2255 relief.

Respectfully submitted,


/s Zachary Lee Newland
Zachary Lee Newland
Senior Litigation Counsel
**Brandon Sample PLC**
P.O. Box 250
Rutland, Vermont 05702
Tel:  (802) 444-4357
Fax: (802) 779-9590
E-mail: zach@brandonsample.com
Texas Bar: 24088967
https://brandonsample.com

*Counsel for Ross William Ulbricht*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 10th day of October 2019, via CM/ECF on all counsel of record.


s/ Zachary L. Newland
Zachary L. Newland