UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

ROSS WILLIAM ULBRICHT,                :

                Movant,              :

        -v.-                                 :   19 Cv. 75212 (LGS)

UNITED STATES OF AMERICA,     :   DECLARATION OF
                                                                         ROSS WILLIAM ULBRICHT
                                                        :

               Respondent.
                                                        :
-------------------------------------------------------------- x

      I, Ross William Ulbricht, declare under penalty of perjury that the following is true and correct.

1.   I was previously charged and convicted in *United States v. Ross William Ulbricht*, No. 14-cr-68 in the U.S. District Court for the Southern District of New York.

2.   On October 1, 2013, I was arrested in San Francisco, California, pursuant to a criminal complaint that was filed against me. The Complaint accused me of (1) conspiracy to commit narcotics trafficking, a violation of 21 U.S.C. §§ 846, 841(b)(1)(A); (2) conspiracy to commit computer hacking, a violation of 18 U.S.C. § 1030(a)(2), and (3) conspiracy to commit money laundering, a violation of 18 U.S.C. § 1956(h).

3.   Joshua Dratel ("Dratel") and his associate Lindsay Lewis ("Lewis") were hired to represent me.

4. After I was transported from California to New York, the Government offered a pre-indictment plea agreement.

5. The terms of the offer required me to plead guilty to a three-count information charging me with the same charges in the Complaint.

6. Both the Government and I would be free to argue for any sentence within the statutory range of punishment. The most serious charge in the Complaint was the drug conspiracy charge. This charge carried a sentence of 10 years to life in prison.

7. In approximately January 2014, Dratel told me that the Government would indict me for engaging in a Continuing Criminal Enterprise ("CCE") if I did not accept the Government's plea offer. Dratel explained that the CCE charge would increase my minimum sentence to 20-years if convicted on the CCE charge.

8. I talked about the Government's plea offer with Dratel and Lewis in January 2014.

9. I was worried about accepting the Government's plea offer because it exposed me to a life sentence.

10. However, I also told Dratel and Lewis that I would rather plead guilty than fight a losing battle that would bankrupt my parents.

11. Dratel responded that he only agreed to represent me because he thought I wanted to fight the charges.

12. I again reiterated to Dratel during this meeting that I did not want to go to trial if it would be a lost cause or ruin my parents financially.

13. I admitted to Dratel and Lewis in November 2013 that I had created the Silk Road and ran the website for a period of time.

14. Dratel and Lewis never explained to me what the Government needed to prove to convict me on the charges in the Complaint. None of my attorneys advised me that the following rules of law applied to the drug conspiracy charged in the Complaint:

   (a) The Government did not need to prove an overt act to show a conspiracy. They did not explain to me that the crime of conspiracy lies in the agreement between two or more persons. *United States v. Shabani*, 513 U.S. 10, 15 (1994).

   (b) The Government did not need to show an express agreement. It would be enough to prove a "tacit understanding to carry out the prohibited conduct" existed. *United States v. Rubin*, 844 F.2d 979, 984 (2d Cir. 1988)

   (c) Because "[s]ecrecy and concealment are essential features of successful conspiracy," prosecutors may prove the "essential nature of the plan and [a defendant's] connections with it" through circumstantial evidence and inferences. *Blumenthal v. United States*, 332 U.S. 539, 557 (1947).

   (d) The prosecution could show specific intent through circumstantial evidence alone. "[A] single act may be sufficient for an inference of involvement in a criminal enterprise of substantial scope at least if the act is of a nature justifying an inference of knowledge of the broader conspiracy." *United States v. Tramunti*, 513 F.2d 1087, 1111 (2d Cir. 1975).

15. Dratel and Lewis told me that there was a "significant risk" that I would be sentenced to life in prison if I accepted the plea offer.

16. According to my lawyers, the Government was going to ask for life in prison if I agreed to the plea offer.

17. I recall Dratel and Lewis saying that taking the plea deal was too risky because it created "too much exposure" for me.

18. My lawyers said that I had nothing to lose by rejecting the plea deal. This was because the U.S. Sentencing Guidelines called for life imprisonment whether I accepted the plea offer or went to trial and was convicted.

19. My attorneys told me that the best chance to avoid a life sentence was by winning at trial.

20. Neither Dratel nor Lewis explained to me that the judge would probably be more lenient—even with the Guidelines recommending life—if I took the plea offer and accepted responsibility.

21. Based on the advice of my lawyers, I thought that the only realistic chance I had to get less than life was if the Government agreed with same.

22. I rejected the Government's plea offer based on Dratel and Lewis' advice.

23. I would have accepted the plea offer and pleaded guilty if my attorneys had explained the elements of the charges against me in the Complaint and how the Government would attempt to prove those elements at trial if I rejected the offer.

24. A clear understanding of the elements—taking into account my undisputed creation and operation of the Silk Road for a period of time—would have

crystallized in my mind that going to trial was exactly the "lost cause" I wanted to avoid.

25. I also would have accepted the plea offer in order to show remorse and accept responsibility for my actions in order to increase the likelihood of receiving a sentence of less than life in prison.

26. Finally, I would have accepted the offer in order to avoid the CCE charge had my lawyers properly advised me as discussed above.

27. I was indicted not long after I rejected the plea offer.

28. Dratel and Lewis did not advise me to plead guilty after the Government's discovery was provided to them.

29. I was never told by Dratel or Lewis that the evidence against me was overwhelming, i.e., that there was little to no chance of winning at trial.

30. Neither Dratel nor Lewis discussed with me that I could enter an "open" guilty plea to the indictment.

31. Because my attorneys never discussed pleading open to the indictment, I did not know that there was a greater chance of receiving less than life in prison by pleading guilty to the indictment—even though the Guidelines would have still recommended a life sentence.

32. Rather, I still believed there was no realistic chance of being sentenced to less than life without the Government's agreement.

33. My lawyers did not recommend that I enter a guilty plea after the judge denied the motion to dismiss the indictment.

34. I would have pleaded guilty to the original indictment, even without a plea agreement, if my attorneys had told me the evidence against me was overwhelming. I would have pleaded guilty if I had known that I did not have a legally viable defense.

35. Similarly, I would have also pleaded guilty to the original indictment without a plea agreement if my attorneys had explained to me that the judge's order denying the dismissal of the indictment provided solid legal footing for the charges against me.

36. A couple of months before trial, I told Lewis that I had heard from other jail inmates that defendants who go to trial tend to be sentenced more harshly if convicted at trial.

37. I asked Lewis if there was a way that I could avoid a life sentence.

38. Lewis told me that defendants who go to trial and lose tend to suffer a "trial tax."

39. Lewis also told me that pleading guilty would not help because the three-point reduction for accepting responsibility would not reduce my Guidelines below life.

40. I asked Lewis to convey a new offer on my behalf: I would plead guilty to the superseding indictment if the Government would recommend a sentence of 30 years.

41. Lewis told me she did not think the government was open to further plea negotiations.

42. None of my attorneys further discussed with me the possibility of a guilty plea from this point forward.

43. I would have entered an open plea to the superseding indictment if my lawyers had advised me that: (1) the evidence against me was overwhelming; (2) the Court's order denying dismissal of the indictment provided strong legal support for the Government's theory of the case; and (3) there was a greater likelihood I would receive less than life if I pleaded guilty versus the likely sentence following a guilty verdict at trial.

44. However, to reiterate, the entire concept of pleading "open," whether to the original or superseding indictment, was never discussed with me by my lawyers.

45. None of my attorneys ever told me that going to trial was a "lost cause."

46. I was never told by my lawyers that I did not have a legally viable trial defense.

47. Instead, Dratel repeatedly assured me that "there was a way to win" at trial.

48. Dratel, for instance, told me that the Government had to "build a bridge from my innocence to guilt," to obtain a conviction and that "the bridge had to be complete."

49. Dratel told me he would admit in opening statements that I started Silk Road, but that this was consistent with a viable trial strategy that could win.

50. According to Dratel, the Government's entire "case would fall apart" if the suppression motion was granted.

51. None of my lawyers told me that the motion to suppress was "fatally deficient."

Declarant sayeth further naught. 28 U.S.C. § 1746.

Signed this \_\_\_8th\_\_\_ day of October, 2019.

*/s/ Ross William Ulbricht*

Ross William Ulbricht