UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                  :

ROSS WILLIAM ULBRICHT,              :
                          Petitioner,   :              19 Civ. 7512
                                          :              14 Crim. 68
            -against-               :                (LGS)
                                          :

UNITED STATES OF AMERICA,       :       OPINION AND ORDER
                           Respondent. :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

       Petitioner Ross William Ulbricht brings this § 2255 Petition to vacate (the "Petition"), set

aside or correct his sentence following trial on charges of narcotics trafficking, narcotics

trafficking conspiracy, continuing criminal enterprise ("CCE"), conspiracy to commit and aid

and abet computer hacking, conspiracy to traffic in fraudulent identification documents and

conspiracy to commit money laundering.  *See* 28 U.S.C. § 2255.  Petitioner claims that he

received ineffective assistance of counsel.  For the reasons stated below, the Petition is denied.

## I.      BACKGROUND

### 1.  Petitioner's Criminal Activity and Arrest

       From early 2011 through approximately 2013, Petitioner owned and operated a vast

online black market, known as "Silk Road," through which thousands of vendors sold

approximately $183 million dollars' worth of illegal drugs, as well as a variety of other goods

and services.  Petitioner oversaw and managed all aspects of Silk Road during its operation

including maintaining the computer infrastructure, deciding what could be sold on the site and

managing a staff of online administrators and computer programmers.  Petitioner operated under

the online pseudonym "Dread Pirate Roberts" ("DPR").

Petitioner was willing to use violence to protect his interests in Silk Road.  Petitioner paid

approximately $650,000 to solicit the murders-for-hire of at least five people.  Unbeknownst to

Petitioner at the time, the murders were not in fact carried out.

On October 1, 2013, Petitioner was arrested at a public library where he was found

logged in to Silk Road acting as DPR.  Federal law enforcement agents seized Petitioner's

laptop, a search of which revealed voluminous evidence tying Petitioner to the creation,

ownership and operation of Silk Road for the entire period of its existence.  This evidence

included thousands of pages of chat logs with Silk Road employees, journal entries describing

Petitioner's ownership and operation of Silk Road, a weekly "to do" list regarding Silk Road

related tasks and a copy of a Silk Road related database.

### 2.  Pre-Trial Plea Negotiations

Following Petitioner's arrest, Joshua Dratel and his associate Lindsay Lewis were hired

to represent Petitioner.  During plea negotiations, the Government orally conveyed its

willingness to have Petitioner plead to a three-count Information charging the same offenses as

the Complaint.  The charges carried a mandatory minimum sentence of 10 years and a maximum

sentence of life imprisonment.  The proposed deal would not limit the Government's ability to

present the Court with facts underlying Petitioner's misconduct and would not prevent the

Government from arguing for any sentence within the statutory range, including life

imprisonment.

In approximately January 2014, Mr. Dratel informed Petitioner that the Government

would indict Petitioner for engaging in a CCE, a charge that would increase Petitioner's

mandatory minimum sentence to twenty years, if Petitioner did not accept the Government's plea

offer.  Petitioner discussed the plea offer with his lawyers but was worried about accepting the

offer because of the exposure to a life sentence.  He rejected the offer by failing to respond to it.

In the fall of 2014, Petitioner authorized his lawyers to present a counterproposal that

would impose a thirty-year cap on his sentence.  However, this proposal did not result in a plea

offer, and no further plea negotiations took place.

### 3.  Trial

Petitioner's trial lasted approximately three weeks and resulted in a guilty verdict on all

seven counts in the Indictment.  During the trial, Mr. Dratel admitted that Petitioner started Silk

Road but argued that Petitioner handed the website off to others.  The defense's case centered

around the argument that these other individuals engaged in the alleged illegal activity and

pinned Petitioner as the "fall guy."

### 4.  Sentencing

Judge Forrest sentenced Petitioner on May 29, 2015.  Judge Forrest agreed with the

Sentencing Guidelines calculation in the pre-sentence report ("PSR") which specified an offense

level of 50 -- which was reduced to 43 as 43 is the highest number on the chart -- a criminal

history category of I, and a resulting Guidelines range of life imprisonment.

Judge Forrest found that the evidence was "ample and unambiguous" that Petitioner

"commissioned five murders as part of his efforts to protect his criminal enterprise and that he

paid for these murders."  The Court also found, by preponderance of the evidence, that several

individuals died from ingestion of drugs purchased on Silk Road.

Ultimately, Judge Forrest sentenced Petitioner principally to two life sentences to run

concurrently, as well as forfeiture of $183,961,921.

### 5. Direct Appeal

On May 31, 2017, the Second Circuit denied Petitioner's appeal and affirmed his

conviction and sentence in all respects. *See United States v. Ulbricht*, 858 F.3d 71 (2d Cir.

2017).

### 6. Vanity Fair Article

On April 2, 2021, Petitioner filed a letter motion requesting permission to supplement his

Petition and to conduct limited discovery based on a Vanity Fair article that suggested the

Government had offered his counsel a favorable plea deal that was not communicated to

Petitioner. The Government filed a letter and affidavit denying that this occurred, and

Petitioner's application was denied.

## II.    LEGAL STANDARD

"Because collateral challenges are in tension with society's strong interest in the finality

of criminal convictions, the courts have established rules that make it more difficult for a

defendant to upset a conviction by collateral, as opposed to direct, attack." *Robinson v. United*

*States*, No. 21 Civ. 786, 2021 WL 568171, at *3 (Feb. 16, 2021) (internal quotation marks

omitted) (quoting *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010)).

A federal prisoner may move to vacate, set aside, or correct his sentence on four grounds

pursuant to § 2255:

> (1) 'that the sentence was imposed in violation of the Constitution or laws of
> the United States, or [ (2) ] that the court was without jurisdiction to impose
> such sentence, or [ (3) ] that the sentence was in excess of the maximum
> authorized by law, or [ (4) ] is otherwise subject to collateral attack.'

*United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (alterations in original) (quoting

U.S.C. § 2255(a)), *cert. denied*, 140 S. Ct. 55 (2019). "In ruling on a motion under § 2255, the

district court is required to hold a hearing '[u]nless the motion and the files and records of the

4

case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez v. United States*, 722

F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255(b)).  "To warrant a hearing, the motion

must set forth specific facts supported by competent evidence, raising detailed and controverted

issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief."  *Id.* at 131.

### III.   DISCUSSION

Petitioner asserts two grounds upon which he should be granted relief under § 2255.

Both are based on claims of ineffective assistance of counsel.  *See Strickland v. Washington*, 466

U.S. 668, 669 (1984).  First, Petitioner argues that his counsel failed "to subject the

Government's case to meaningful adversarial testing" during trial.  Second, Petitioner argues that

his counsel provided deficient plea advice during pre-trial plea negotiations.

### A.  Ineffective Assistance of Counsel

The Sixth Amendment provides "the right to the effective assistance of counsel."

*Strickland*, 466 U.S. at 669.  "There is 'a strong presumption that counsel's conduct fell within

the wide range of professional assistance.'"  *Weingarten v. United States*, 865 F.3d 48, 52 (2d

Cir. 2017) (quoting *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (quoting *Strickland*, 466

U.S. at 689)).  "To overcome that presumption, a petitioner must establish two elements.  First,

the petitioner must show that counsel's performance was deficient by demonstrating that the

representation 'fell below an objective standard of reasonableness.'"  *Weingarten*, 865 F.3d at 52

(quoting *Strickland*, 466 U.S. at 688).  "Second, the petitioner must show that counsel's deficient

representation was prejudicial to the defense by establishing 'that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.'"  *Id.* (quoting *Strickland*, 466 U.S. at 694).  "[A]n ineffective-assistance-of-

counsel claim may be brought in a collateral proceeding under § 2255, whether or not the

petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

### 1. Adversarial Testing

The Petition alleges that defense counsel violated Petitioner's Sixth Amendment rights by failing to subject the Government's case to adversarial testing. *See United States v. Cronic*, 466 U.S. 648, 656-67 (1984). Petitioner argues that defense counsel's trial strategy, including admitting that Petitioner created Silk Road and stipulating that illegal drugs were bought and sold from Silk Road, was constitutionally deficient. Petitioner's claim fails because he cannot establish either deficient performance or prejudice.

Under the Sixth Amendment, the adversarial process requires counsel to act in the role of an advocate and to subject the prosecution's case to adversarial testing. *Cronic*, 466 U.S. at 656. Prejudice is presumed and need not be shown as would otherwise be required under *Strickland* if counsel's failure is complete. *See Florida v. Nixon*, 543 U.S. 175, 190 (2004). "A presumption of prejudice is not in order based solely on a defendant's failure to provide express consent to a tenable strategy counsel has adequately disclosed to and discussed with the defendant." *Id.* at 179. An evaluation of counsel's performance requires consideration of all the circumstances, *see Strickland*, 466 U.S. at 688, and even counsel's concession of guilt, or elements of a crime, may be warranted in certain circumstances. *See Nixon*, 543 U.S. at 190-91; *Bierenbaum v. Graham*, 607 F.3d 36, 52 (2d Cir. 2010) (holding that conceding the time of victim's death, a crucial element of the prosecution's theory of the case, was not ineffective assistance because it was a "reasonable trial strategy to establish a forthright relationship with the jury"); *United States v. Arnold*, 126 F.3d 82, 89 (2d Cir. 1997) ("Trial counsel's strategy to concede [certain] elements of the [charged] offense was reasonable in light of the overwhelming evidence in the case . . . .").

Contrary to Petitioner's assertions, defense counsel did not admit Petitioner's guilt, and a *Strickland* analysis applies. *See United States v. Jones*, 482 F.3d 60, 77-78 (2d Cir. 2006). Faced with overwhelming evidence of Petitioner's guilt, defense counsel adopted a reasonable trial strategy that articulated a clear theory based on an alternative perpetrator and maintained credibility by making certain strategic admissions. Defense counsel pursued this strategy through cross-examination of the Government's witnesses and secured certain concessions including from Special Agent Der-Yeghiyan, who stated that people other than Petitioner had been investigated as founders of Silk Road, and from FBI Computer Scientist Thomas Kiernan, who stated that Petitioner's laptop had vulnerabilities that could have been exploited by a third party. While Mr. Dratel conceded that Petitioner started Silk Road, this concession was strategic and reasonable to maintain credibility with the jury in light of the overwhelming evidence that Petitioner had done so. *See Graham*, 607 F.3d at 52. Further, Mr. Dratel's drug sale stipulations did not cover the time periods at the beginning and end of the scheme when it was acknowledged that Petitioner was associated with Silk Road. These stipulations decreased the amount of time spent discussing massive drug quantities and police procedure related to those drugs. In any event, Petitioner cannot show prejudice because the evidence of Petitioner's guilt -- including that found on Petitioner's laptop, on various websites and at his apartment -- was overwhelming. *See Ulbricht*, 858 F.3d at 120.

Petitioner's argument that defense counsel strategy precluded the possibility of arguing that Petitioner had withdrawn or never joined the narcotics conspiracy is unpersuasive. Counsel's trial strategy centered on the argument that the illegal activity conducted on Silk Road was perpetrated by someone else. This approach necessarily relied on certain concessions to maintain its credibility, and the availability of an alternative strategy does not mean that counsel

was ineffective. *See Strickland*, 466 U.S. at 689 ("Even the best criminal defense attorneys would not defend a particular client in the same way."). Petitioner's first ground for habeas relief fails on both *Strickland* prongs.

### 2. Plea Advice

The Petition also alleges that defense counsel provided deficient advice during the plea bargaining process, including by failing to explain the strength of the Government's case or possible consequences of going to trial. *See Lafler v. Cooper*, 566 U.S. 156, 160 (2012). Petitioner's claim fails because he cannot establish either deficient performance or prejudice.

A defendant is entitled to effective assistance of counsel during plea negotiations. *Lafler*, 566 U.S. at 162. Counsel performs deficiently when he fails to communicate a formal plea offer that may be favorable to the accused, *Missouri v. Frye*, 566 U.S. 134, 145 (2012), or "inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed," *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000). To prove prejudice, Petitioner must show that, but for counsel's errors, there is a reasonable probability that he would have accepted a plea offer, the plea offer would not have been withdrawn by the prosecution in light of intervening circumstances, the court would have accepted the terms of the plea offer, and "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164; *see also Fulton v. Graham*, 802 F.3d 257, 266 (2d Cir. 2015). To justify a full hearing, Petitioner's sworn statement that he would have accepted a plea offer must be accompanied by some "objective evidence," such as a significant sentencing disparity. *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011) (citing *Puglisi v. United States*, 586 F.3d 209, 215-16 (2d Cir. 2009)).

Petitioner cannot show deficient performance.  Petitioner admits that the Government made a pre-indictment plea offer, the only plea offer made by the Government, and that he was informed that the Government would be free to argue for any sentence within the statutory range of punishment including and up to life imprisonment.  Defense counsel also explained to Petitioner that, if he did not accept the Government's offer, he would be indicted for engaging in a CCE, which would increase his minimum sentence to 20 years if he were convicted.  Petitioner further states that counsel explained to him the risks of the plea offer.  The record shows that counsel communicated the Government's plea offer to Petitioner and explained the risks associated with it.

Petitioner argues that his counsel's advice was deficient because it allegedly failed to explain what the Government needed to prove at trial, the strength of the Government's case, the possibility of pleading guilty without a plea offer from the Government, and that the district court judge would likely be more lenient at sentencing if he pleaded guilty and accepted responsibility.  These statements are "self-serving and improbable." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001).  The credibility of Petitioner's assertions is undercut by defense counsel's detailed affidavit and Petitioner's own statements.  First, counsel explained all the statutory elements of the drug conspiracy "in detail, and repeatedly over the course of the 15-month pretrial period."  Second, Petitioner was aware of the strength of the Government's case.  It is undisputed that Petitioner was provided with all the discovery that had been provided to counsel.  Defense counsel also discussed the nature of the Government's case with Petitioner.  Third, it is improbable that Petitioner would have pleaded guilty to the superseding indictment in full when he had rejected a pre-indictment plea offer that did not include a CCE charge.  Fourth, Petitioner admits that counsel discussed with him the concept of a "trial tax," namely that

9

defendants who go to trial and are convicted are treated less favorably at sentencing than defendants who plead guilty and accept responsibility, an admission that directly contradicts Petitioner's assertions to the contrary.

Petitioner's failure to show deficient performance is dispositive regarding his second ground for relief. But even assuming, *arguendo*, that petitioner could establish that trial counsel gave him inadequate advice, the record does not support a finding of prejudice. The Government's original plea offer exposed Petitioner to a sentence of life imprisonment and did not limit the Government's ability to argue for that sentence or present to the district court the facts underlying Petitioner's misconduct, including the murders-for-hire and deaths that resulted from Silk Road purchases. The addition of the CCE charge did not alter Petitioner's final Guidelines' recommendation of life imprisonment because Petitioner was already above the maximum offense level. Even assuming that Petitioner would have benefitted from a three-level reduction for acceptance of responsibility if he had pleaded guilty, U.S.S.G. § 3E1.1, Petitioner would have faced a Guidelines offense level of 45, two points higher than the maximum level of 43. There was no Guidelines sentencing disparity that would justify a finding of prejudice. *See Raysor*, 647 F.3d at 495. Further, Petitioner rejected the Government's plea offer because it would have "exposed [him] to a life sentence," and the record shows that he would not have accepted a plea offer or pleaded in full to the superseding indictment unless he was assured that there was some cap on his potential sentence, as evidenced by his counterproposal of a plea in exchange for the Government's requesting no more than thirty years in prison, a limitation that the Government was unwilling accept.

Petitioner argues that the shorter sentences imposed on others involved with Silk Road demonstrates a reasonable probability that Petitioner would have been sentenced to less than life

imprisonment if he had pleaded guilty and accepted responsibility for his crimes.  This argument is unpersuasive because Petitioner's co-conspirators' conduct was categorically different from that of Petitioner, who was the mastermind of the illegal enterprise and who, unlike the other persons charged in connection with Silk Road, commissioned murders-for-hire.  Petitioner further argues that the more reasonable strategy would have been to accept responsibility and put on a persuasive mitigation case at sentencing.  However, the record shows that Petitioner would not have pleaded guilty in any event.

### B.  Evidentiary Hearing

Petitioner requests an evidentiary hearing on his claims.  An evidentiary hearing is unnecessary when "the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  A decision without a testimonial hearing is proper "where (1) the allegations of the motion, accepted as true, would not entitle the petitioner to relief[,] or (2) the documentary record, including any supplementary submissions such as affidavits, render a testimonial hearing unnecessary."  *Rosa v. United States*, 170 F. Supp. 2d 388, 398 (S.D.N.Y. 2001) (citing *Chang*, 250 F.3d at 85–86).  Unlike a summary judgment motion in a civil case, "a district court need not assume the credibility of factual assertions" in the Petition and "may permissibly forgo a full hearing and instead request letters, documentary evidence, and affidavits . . . ."  *Puglisi*, 596 F.3d at 214-15.  As explained above, the record plainly demonstrates that no facts warrant further development at a hearing.  Therefore, the request for a hearing is denied.

### IV.   CONCLUSION

For the reasons discussed above, the Petition is DENIED.

11

As Petitioner has not made a substantial showing of the denial of a constitutional right, a

Certificate of Appealability will not issue.  *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State*

*Div. of Parole*, 209 F.3d 107, 111-12 (2d Cir. 2000).  The Court certifies, pursuant to 28 U.S.C. §

1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, and

therefore in forma pauperis status is denied for the purpose of an appeal.  *See Coppedge v.*

*United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good

faith . . . demonstrated when he seeks appellate review of any issue not frivolous.").

The Clerk of Court is respectfully directed to enter a judgment in favor of Respondent

and close this case.  The Clerk is further instructed to mail a copy of this Order to Petitioner at

the address on the docket.


Dated:  June 9, 2022
        New York, New York


_____
          LORNA G. SCHOFIELD
      UNITED STATES DISTRICT JUDGE